IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DARRELL L. HOFFMAN                                                                                    PLAINTIFF


v.                                      CASE NO.        12-3008


CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                                             DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.  Procedural Background:

The plaintiff filed his applications for DIB and SSI on June 1, 2009, alleging an onset date of May 21, 2009, due to plaintiff's stroke, hypertension, and diabetes mellitus type 2. Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on August 17, 2010.  Plaintiff was present and represented by counsel.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the administrative hearing, plaintiff was 40 years of age and possessed a GED. The Plaintiff had past relevant work ("PRW") experience as a truck driver (T. 149).

On October 13, 2010, the Administrative Law Judge ("ALJ") concluded that the Plaintiff had "no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment" (T. 13) and was, therefore, not under a disability (T. 16).

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id*. As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A).

The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003). In this particular case the ALJ halted the sequential evaluation at Step Two because he did not believe that the Plaintiff had a severe impairment.

### III.  Discussion:

At step two of the sequential evaluation process, the claimant bears the burden of proving that he has a severe impairment. *Nguyen v. Chater*, 75 F.3d 429, 430-431 (8th Cir. 1996). An impairment or combination of impairments is not severe if there is no more than a minimal effect on the claimant's ability to work. *See, e.g., Nguyen*, 75 F.3d at 431. A slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities is not a severe impairment. SSR 96-3p, 1996 WL 374181 (1996); SSR 85-28, 1985 WL 56856 (1985). If the claimant is not suffering a severe impairment, he is not eligible for disability insurance benefits. 20 C.F.R. § 404.1520(c).

The ALJ relied on SSP 96-4p and stated that although "the regulations provide that the

existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, the regulations further provide that under no circumstances may the existence of impairment be established based on symptoms alone. Thus, regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings (SSR 96-4p)." (T. 13-14).

He went on to state that "No symptom or combinations of symptoms by itself can constitute a medically determinable impairment. In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process (SSR 96-4p)." (Id.).

The Plaintiff's initial Disability Report on June 1, 2009 listed stroke, hypertension, and diabetes mellitus type 2 as his disabling conditions. (T. 142). The Plaintiff subsequently completed an undated Disability Report in which he reported "Arthritis in Both knees and Back, DDD" (T. 168) as additional impairments. In another undated Disability Report he complained of Dizzy Spells. (T. 175).

The ALJ concludes his opinion with the statement that "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." (T. 16).

**1. Stroke:**

The Plaintiff presented to the Baxter Regional Medical Center (BRMC) on May 21, 2009

complaining of loss of feeling in his right hand, swelling and some trouble swallowing that began three weeks prior (T. 218) as well as paresthesia and "altered speech". (T. 210)  According to the Discharge Notes it was referred to as "slurred speech" (T228).  The CT scan showed no intracranial hemorrhage or mass at this time but there was a "low-dense area in the left basal ganglia that may well represent a subacute infarct".  (T. 223).  The CT report, however, ventured the opinion that the infarct in the left basal ganglia "should not cause left arm weakness, which is the patient's main complaint". (Id.). The opinion did not discuss his complaints of difficulty in swallowing or slurred speech.   A Carotid Doppler was performed and showed that the flow in the carotid artery was normal. (T. 233).

      The ALJ's opinion discounts the CT scan that showed a  "low-dense area in the left basal ganglia that may well represent a subacute infarct", and the subsequent diagnosis of "subacute cerebrovascular accident (T. 219) because Dr. McAlister was of the opinion that the damage to the brain would not account for his left arm weakness.  While Dr. McAlister was of the opinion that the area of the Plaintiff's brain that suffered the damage "should not"  cause "left arm weakness" he offered no opinion on whether it would cause slurred speech or difficulty in swallowing".

      The Plaintiff mother presented a letter dated July 6, 2010 which stated that the Plaintiff was a licenced CDL driver and that he "was let go from his job as a truck driver when his employer was informed that he had suffered a stroke." (T. 183).  In his undated initial Disability Report the Petitioner stated that he had stopped working because he "had a stroke and was no longer able to drive a truck". (T. 142).  It appears that the Plaintiff had done this kind of work from 1988 until May 2, 2009 (T. 143).  At least upon the face of the record it appears that the

Plaintiff could no longer use his CDL because of his stroke.  That alone would have been a showing of greater that a "minimal impact" upon the Plaintiff's ability to work.

**2.  Osteoarthritis:**

The Plaintiff testified that he had difficulties with his knees and that he had three surgeries on his right knee which made lifting very difficult.(T. 35) and pain in his back makes standing for any period of time difficult (T. 37). The ALJ found that there was "no evidence from a treating or examining physician, nor any radiological evidence, establishing the claimant's alleged degenerative disc disease.  Absent objective medical evidence, degenerative disc disease cannot be considered a severe impairment." (T. 15).   The Defendant also argues this point in their brief.  (ECF No. 10, p.. 7).

The Plaintiff was seen by Dr. Brownfield on September 2, 2009 for a consultive examination.  (T. 241). While her notes are difficult to read it is clearly indicated that she reviewed the results of "Lab Studies, X-rays, Etc." (T. 245).  Dr. Hicks,  the non-examining consultive physician,  provided his interpretation of Dr. Brownfield's notes in his Additional Comments section of his Report which states: " XR L-spine- nml  curve, mild to moderate  OA with some spurring, moderate facet OA, DDD mild to moderate." (T. 253).  The ALJ's finding that the DDD was unsupported by any radiological evidence is not correct.

Dr. Hicks interprets Dr. Brownfield's diagnosis to be "CVA with mild expressive aphasia, lower back pain, and bilateral knee pain" (T. 253, 245).  Dr. Brownfield's opinion was "globally moderate limitations, moderate to severe ? Stoop (knees), lifting." (Id.). Dr. Hicks, a non-examining consultive physician,  felt that "Owing to MDIs of lumbar DDD, OA lumbar spine, CVA with normal neuromuscular function some expressive aphasia, HTN and DM, and

considering ADLs along with MSS, RFC is light." (T. 253).

This ALJ decision to stop the evaluation of the Plaintiff's claim at step two disregards the x-rays taken by Dr. Brownfield (T. 245) and her opinion of the Plaintiff's osteoarthritis in his back and knees which opinion was adopted by Dr. Hicks both of which were Agency consultants. (T. 253).

3. **Obesity:**

The medical records from BRMC in May 2009 reflect that the Plaintiff was "a 39-year-old white male with a history of diabetes for 2 years and obesity for most of his adult life". (T. 218). The ALJ never mentions much less considers the Plaintiff's obesity.

Social Security Ruling ("SSR") 00-3p, which states that obesity is a "medically determinable impairment" that can constitute a severe impairment under Listing 12.05C, and reminds adjudicators "to consider [obesity's] effects when evaluating disability." SSR 00-3p, 65 Fed. Reg. 31,039, 2000 WL 33952015 (May 15, 2000). Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity. Part A, 1.00(Q).

4. **Diabetes:**

When the Plaintiff was discharged from the BCMC in May of 2009 he was also diagnosed with (2) diabetes mellitus type 2, uncontrolled, (3) hyperlipidemia, (4) hypertension, and (5) renal insufficiency (T. 228) but was discharged in "stable condition with the addition of an aspirin" (T. 201) to his other prescribed medications. His other listed medications in May 2009 at time of discharge were Enalapril[2], Levothyoxine[3], Metformin[4], Nexium[5], and Vytorin[6]. The American Diabetes Association list "tingling/numbness in the hands/feet" as one of the symptoms of diabetes.  (See www.diabetes.org).  The Plaintiff was treated in May 2009 for paresthesia of the right side and he testified that the numbness makes it difficult to shift the gears on a truck and to turn the truck. (T. 30).

Clearly the ALJ may have questions about the credibility of the Plaintiff's testimony concerning his limitations but that is reserved for another step in the sequential evaluation process.  "The sequential evaluation process may be terminated at step two **only** when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir.2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir.1996).

---

[2]Enalapril is in a group of drugs called ACE inhibitors. ACE stands for angiotensin converting enzyme. Enalapril is used to treat high blood pressure (hypertension) and congestive heart failure.

[3]Levothyroxine is a replacement for a hormone that is normally produced by your thyroid gland to regulate the body's energy and metabolism. Levothyroxine is given when the thyroid does not produce enough of this hormone on its own. Levothyroxine treats hypothyroidism (low thyroid hormone)

[4]Metformin is an oral diabetes medicine that helps control blood sugar levels. Metformin is for people with type 2 diabetes.

[5]Nexium (esomeprazole) belongs to a group of drugs called proton pump inhibitors. Nexium decreases the amount of acid produced in the stomach. Nexium is used to treat symptoms of gastroesophageal reflux disease (GERD) and other conditions involving excessive stomach acid.

[6]Vytorin contains a combination of ezetimibe and simvastatin. Vytorin is used to treat high cholesterol

Social Security regulations provide that the Commissioner is to consider the combined effect of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of such sufficient severity to be the basis of disability under the law. 20 C.F.R. §§ 404.1523, 416.923;  42 U.S.C. § 423(d)(2)(B). Here it is clear that the Plaintiff's CVA, Osteoarthritis, DDD, and Diabetes Mellitus Type 2 have more than a minimal impact on his ability to work and the ALJ's determination that there "are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment is not supported by the record.

### IV. Conclusion:

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this March 20, 2013.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE